FILED
Mar 12, 2025
01:03 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

Gary Mansell ) Docket No. 2023-07-5993
)
v. ) State File No. 23235-2022
)
Southeast Personnel Leasing, Inc., et al. )
)
)
Appeal from the Court of Workers' )
Compensation Claims )
Allen Phillips, Judge )

---

### Affirmed in Part, Reversed in Part, and Remanded

---

In this interlocutory appeal, the employer contends the trial court erred by ordering the payment of temporary benefits following the treating physician's determination the employee had reached maximum medical improvement. The employee suffered an injury to his back for which he received authorized medical care for several months before his treating physician placed him at maximum medical improvement and assigned an impairment rating. Several months later, the employee advised his authorized physician that his back pain had returned. His physician provided additional medical treatment before referring him to a neurosurgeon. The employer briefly reinstated temporary disability benefits before ceasing the payments and denying the referral to the neurosurgeon, arguing it constituted a "second opinion" that the employer had no legal obligation to provide. Following an expedited hearing, the trial court determined the employee was entitled to the requested temporary disability and medical benefits. The employer has appealed. Upon careful consideration of the record, we reverse the order compelling the payment of additional temporary benefits, affirm the order in all other respects, and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Terri L. Bernal, Nashville, Tennessee, for the employer-appellant, Southeast Personnel Leasing, Inc.

Monica Rejaei, Memphis, Tennessee, for the employee-appellee, Gary Mansell

1

## Factual and Procedural Background

Gary Mansell ("Employee") hurt his back in the course and scope of his employment for Southeast Personnel Leasing, Inc. ("Employer") on May 10, 2021. Employee was changing a flat tire when he threw the replacement tire off his truck trailer, lost his balance, and fell to the ground. He reported the injury to Employer and sought medical treatment at Fast Pace Urgent Care two days later, where he was evaluated by a nurse practitioner.[1] At that time, Employee complained of constant pain in his right low back and reported a previous lumbar discectomy. The provider obtained x-rays, injected medication into Employee's low back, prescribed a muscle relaxer as well as a non-steroidal anti-inflammatory, told Employee to return in seven days, and took him off work. He returned to Fast Pace on May 19, 2021, and continued to complain of pain in his low back as well as in his abdomen. Employee was prescribed a steroid and another muscle relaxer, had his work restrictions extended, and was referred to an orthopedic surgeon.

On May 25, 2021, Employee saw Dr. Nicholas Vance at West Tennessee Bone and Joint Institute.[2] At that time, he complained of ongoing back pain and reported undergoing a discectomy on his lumbar spine "ten or twelve" years prior. Dr. Vance diagnosed Employee with a lumbar strain and continued him on muscle relaxers and a steroid. Dr. Vance also restricted Employee from work and referred him to physical therapy. Employee returned to Dr. Vance in both June and July reporting no real improvement, prompting Dr. Vance to order an MRI of Employee's lumbar spine, which revealed severe left and moderate right facet joint arthropathy but no other significant findings. Dr. Vance reviewed the MRI results with Employee at his August appointment and referred Employee to another doctor in his practice, Dr. William Seely, III, for pain management. He instructed Employee to return to him in two to three months.

Employee first saw Dr. Seely on September 1, 2021, at which time he received a medial branch nerve block. He reported an eighty percent improvement in the days after the injection, and the procedure was repeated on September 22. The following week, Dr. Seely offered Employee radiofrequency ablation or an epidural steroid injection ("ESI"). Employee opted for the ESI and reported a ninety-five percent improvement in symptoms in the days afterward. He returned to Dr. Vance on November 11, 2021, who released him to full duty work and instructed him to return the following month. At a December 9, 2021 appointment, Dr. Vance placed Employee at maximum medical improvement ("MMI") and assigned a one percent permanent medical impairment rating. Dr. Vance completed a Form C-30A reflecting this information on December 28, 2021. As a result, Employee's temporary disability benefits were terminated.

---

[1] Although there is no signed panel in the record, it appears Employer authorized this treatment.

[2] Although there is no signed panel of orthopedists in the record, Employer authorized this treatment.

Approximately ten months later, on October 11, 2022, Employee returned to Dr. Vance complaining he had woken up a couple of weeks prior with "intense pain in his back that was the same pain as last year." He also reported having a myocardial infarction or cerebrovascular event in May 2022. Dr. Vance prescribed a muscle relaxer and steroid and restricted Employee from work. His diagnosis of a lumber strain was unchanged. When Employee returned in December 2022 with the same complaints, Dr. Vance ordered an MRI, which was read as unchanged from his 2021 MRI. Dr. Vance referred Employee back to Dr. Seely and continued Employee's work restrictions.

Employee saw Dr. Seely in May 2023.[3] Due to Employee's heart condition and related treatment, he could not undergo an ESI at that time. However, Employee could undergo a medial branch nerve block, which Dr. Seely scheduled for later in June. He also prescribed narcotic pain medications in the interim, and Employee returned for a refill on June 22, 2023. At that time, Dr. Seely's nurse practitioner stated, "[b]ased on [Employee's] symptoms, history and physical exam findings as well as review of available imaging studies and reports, we feel that there are multiple components to [his] pain." Employee received the previously scheduled nerve block the following week, reporting some relief afterward. He underwent another nerve block in August 2023, with less reported relief. Thereafter, Employee's cardiologist allowed him to proceed with the ESI in January 2024, but Employee reported minimal relief. Dr. Seely then referred Employee to physical therapy, which Employee reported was unsuccessful at his appointment in May 2024. Dr. Seely referred Employee back to Dr. Vance "for evaluation of work hardening program vs. MMI." Employee saw Dr. Vance on May 21, 2024, at which time Dr. Vance stated he had exhausted all treatment options and referred Employee to neurosurgeon Dr. John Brophy for evaluation and treatment.[4]

With respect to the issue of temporary disability benefits, Employer had reinstated those benefits in October 2022 when Employee returned to Dr. Vance with complaints of more back pain, but it ceased payments on November 27, 2022, based on Dr. Vance's previous determination that Employee had reached MMI. Later, Employer declined to authorize the referral to Dr. Brophy, labelling it a "second opinion" under Tennessee Code Annotated section 50-6-204(a)(3)(C), which it contended it had no obligation to provide. Employee filed a petition for benefit determination, and an expedited hearing was held on December 10, 2024. Thereafter, the trial court issued an order instructing Employer to pay temporary disability benefits from November 28, 2022 through the date of the hearing in the amount of $82,024.02, with benefits to continue until Employee either returns to work or is "finally placed at maximum medical improvement." The

---

[3] He saw Dr. Vance again on April 4, 2023, at which time Dr. Vance "continued" Employee's sedentary work restrictions. This is the first mention of sedentary work restrictions contained in the record.

[4] This is the first referral to Dr. Brophy in the record, although Dr. Vance had previously indicated that a referral to a neurosurgeon might be necessary to consider appropriate treatment options for a patient on anti-coagulants for a cardiac condition.

court reasoned that Employee was disabled from working due to his workers' compensation injury and had established the period of disability. It also relied on the lack of any evidence that a settlement offer was extended at the time Employee was placed at MMI as required by Bureau regulations. Finally, the trial court ordered Employer to schedule an appointment with Dr. Brophy and referred the case to the Bureau's Compliance Program due to what it concluded was Employer's improper withholding of medical treatment. Employer has appealed.

## Standard of Review

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes, rules, and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

## Analysis

Employer raises one issue on appeal: whether the trial court erred in awarding Employee temporary disability benefits after Dr. Vance had placed him at MMI in December 2021. For his part, Employee contends temporary benefits are appropriate, arguing that Dr. Seely was the treating physician and that he never placed Employee at MMI.[5]

In determining Employee was entitled to additional temporary disability benefits, the trial court relied primarily on Dr. Vance's frequent description of Employee as a "chronic workers' comp case" and the lack of any evidence that Employer made a settlement offer after Employee was originally placed at MMI. We conclude, however, that Employee is not entitled to additional temporary disability benefits unless and until he submits appropriate medical evidence that he has not reached MMI from his work-related injury, or in the alternative, was placed at MMI incorrectly or prematurely following his work-related injury. If such evidence is produced, the trial court could then

---

[5] Employer did not appeal the trial court's order to schedule an appointment with Dr. Brophy or the trial court's referral of Employer to the Compliance Program.

weigh such evidence in addressing whether Employee is legally entitled to additional temporary disability benefits.

"[I]t is well-settled that an injured worker's entitlement to temporary total disability benefits ends once the employee is able to return to work or has reached maximum medical improvement." *Wilson v. Dana Holding Corp.*, No. 2015-07-0143, 2016 TN Wrk. Comp. App. Bd. LEXIS 90, at *5 (Tenn. Workers' Comp. App. Bd. Nov. 30, 2016). The trial court determined that rule was "not without exception," citing *Wise v. Murfreesboro Health Care Center*, No. 01S0S-9404-CH-00034, 1994 Tenn. LEXIS 389 (Tenn. Workers' Comp. Panel Dec. 22, 1994), a pre-reform case in which the employee suffered a compensable injury to her back, underwent surgery, and was released at MMI. *Id.* at *2. A year later, but before any settlement occurred, the employee began having leg pain and sought medical treatment. *Id.* A new MRI revealed the employee had a recurrent herniation, which the treating doctor related to the initial work injury. *Id.* at *3. The trial court found that the MMI determination was "premature and incorrect" and awarded temporary disability benefits for the period of time the employee could not work after her second surgery. *Id.* at *9. The Panel affirmed the trial court's decision. *Id.*

The trial court in this case also relied on *Everett v. Life Style Staffing*, No. 2023-03-1417, 2024 TN Wrk. Comp. App. Bd. LEXIS 40 (Tenn. Workers' Comp. App. Bd. Nov. 7, 2024) in awarding additional temporary disability benefits. In *Everett*, the employee had previously been denied temporary disability benefits because she failed to appear for work when her employer had offered to return her to work within her restrictions. *Id.* at *3. After considering the reasonableness of both the offer and the employee's refusal to return to work, the trial court determined the employee had not proven she was likely to prevail at trial in establishing an entitlement to temporary disability benefits. *Id.* at *5. The trial court also ordered the employer to provide a panel of specialists. *Id.* The specialist the employee chose opined the employee was unable to work from the date of the accident until she saw his nurse practitioner. *Id.* at *5-6. After a hearing, the court awarded temporary disability benefits based on this new evidence. *Id.* at *7. We affirmed, stating that, absent evidence to the contrary, the employee had met her burden of showing that she would likely be successful at trial in establishing entitlement to the temporary disability benefits. *Id.* at *12-13.

We conclude both of these cases are distinguishable from the present case and their holdings do not dictate the result here. In *Wise*, the injured worker's condition changed, as was shown by objective imaging. *Wise*, 1994 Tenn. LEXIS 389, at *3. Moreover, the evidence available to the court included expert proof that the recurrent herniation was due to her initial work injury. *Id.* Thus, in *Wise*, there was expert evidence indicating the recurrence of a work-related herniation that caused a new period of temporary disability. In the present case, Employee returned to Dr. Vance after ten months due to a spontaneous recurrence of pain, but objective testing revealed no new

findings warranting a change in diagnosis. Further, Employee has come forward with no expert proof that Employee's new complaints of pain ten months after being placed at MMI were primarily caused by Employee's May 2021 work injury. Indeed, Dr. Seely's nurse practitioner stated in the June 22 medical note that there were "multiple components" to Employee's symptoms. Furthermore, Employee had a well-documented prior low back injury resulting in the need for surgery.

In *Everett*, the employee had *not* been placed at MMI and provided expert proof from her treating physician that she had restrictions that prevented her from working. *Everett*, 2024 TN Wrk. Comp. App. Bd. LEXIS 40, at *3. Employee in this case, however, has provided no expert proof that Dr. Vance placed him at MMI prematurely or that he has retracted that determination or otherwise reversed his opinion. Although the burden of proof at expedited hearings is lower than the burden of proof at trial, the employee still must show that he would likely prevail at trial in proving that the original MMI determination was premature. *See, e.g.*, *Miller v. Old Folks Mission Center, Inc.*, No. 2018-07-0022, 2019 TN Wrk. Comp. App. Bd. LEXIS 1, at *18 (Tenn. Workers' Comp. App. Bd. Jan. 9, 2019).

In short, to affirm the trial court's finding with respect to Employee's claim for additional temporary disability benefits, we would be required to conclude that the authorized treating physician's original MMI determination was premature or medically incorrect in some way without any expert medical opinion to support such a conclusion. This we cannot do, as such a conclusion would be speculative. As we have noted previously, "judges, like lawyers, are poorly positioned to formulate expert medical opinions." *Love v. Delta Faucet Company*, No. 2015-07-0195, 2016 TN Wrk. Comp. App. Bd. LEXIS 45, at *15-16 (Tenn. Workers' Comp. App. Bd. Sept. 19, 2016); *see also Scott v. Integrity Staffing Solutions*, No. 2015-01-0055 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8 (Tenn. Wrk. Comp. App. Bd. Aug. 18, 2015) ("Judges are not well-suited to second-guess a medical expert's treatment, recommendations, and/or diagnoses *absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record*." (emphasis added)).[6]

Finally, the trial court also relied on Tenn. Comp. R. and Regs. 0800-02-14-.08(2) (2022) in concluding that Employee had not reached MMI. That rule states an adjuster "shall make an offer in writing within thirty (30) calendar days" of the receipt of a Form C-30A. The record is silent as to whether such a written offer was made, but it is clear from the transcript of the expedited hearing that extensive negotiations took place between the parties. However, even if no written offer was made, we can find no

---

[6] We similarly find no merit in Employee's argument that Dr. Vance was not the treating physician but was instead a "point person" within the practice, and that Dr. Seely, who provided pain management, was the "actual" treating physician who must determine MMI. Dr. Vance referred Employee to Dr. Seely with instructions to return to him, and Dr. Seely referred Employee back to Dr. Vance when he had completed his course of treatment.

authority, and none has been cited to us, suggesting that this rule in any way impacts an expert medical decision as to whether an employee has reached MMI. *See, generally*, Tenn. Comp. R. & Regs. 0800-02-17-.25(2) (2023).

In sum, Employee was placed at MMI by his authorized treating physician, and he has provided no countervailing medical proof that the original MMI determination was premature, incorrect, or has been retracted by his authorized treating physician. Thus, we conclude that the evidence preponderates against the trial court's determination that Employee is likely to prevail at trial in establishing an entitlement to additional temporary disability benefits at this time.

## Conclusion

For the foregoing reasons, we reverse the trial court's order to the extent it awarded additional temporary disability benefits, affirm the order in all other respects, and remand the case. Costs on appeal are taxed to Employee.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Gary Mansell | ) | Docket No. 2023-07-5993 |
| | ) | |
| v. | ) | State File No. 23235-2022 |
| | ) | |
| Southeast Personnel Leasing, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 12th day of March, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Terri L. Bernal | | | | X | tbernal@hennessyroach.com mrojas@hennessyroach.com |
| Monica Rejaei | | | | X | mrejaei@nstlaw.com atarbania@nstlaw.com |
| Allen Phillips, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*Olivia Yearwood* (signature)

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov